IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE COACHMAN, JR., )
)
Plaintiff, )
)
v. ) CIV. ACT. NO. 2:10CV711-MHT-CSC
) (WO)
HYUNDAI MOTOR MANUFACTURING )
ALABAMA, LLC, )
)
Defendant. )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff, Willie Coachman, Jr. ("Coachman"), a former employee of defendant Hyundai Motor Manufacturing Alabama, LLC ("H.M.M.A."), brings this actions pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117. He alleges that H.M.M.A. discriminated against him by denying him a reasonable accommodation for his disability and wrongfully discharging him in violation of the ADA. The court has jurisdiction of this case pursuant to the jurisdictional grants in 42 U.S.C. § 12117 and its federal question jurisdiction.

On September 13, 2010, H.M.M.A. filed a FED.R.CIV.P. 12(b)(6) motion to dismiss or in the alternative motion for summary judgment. (Doc. No. 7.) On September 23, 2010, this court ordered the plaintiff to respond to the defendant's motion for summary judgment. (Doc. No. 10.) In response to the defendant's motion, the plaintiff filed an affidavit and other evidentiary materials. (Doc. No. 11.) The court construes the plaintiff's affidavit as a

response to the defendant's motion for summary judgment.

This action is now pending before the court on the defendant's FED.R.CIV.P. 12(b)(6) motion to dismiss or in the alternative motion for summary judgment. (Doc. No. 7.) The court has carefully reviewed the defendant's motion for summary judgment, the plaintiff's response, and parties' evidentiary materials and concludes that the defendant's motion for summary judgment should be denied.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

---

[1] In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

> "[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

*Id.* at 324.

Effective December 1, 2010, the language of FED.R.CIV.P. 56(a) was amended. The word "dispute" replaced the word "issue" to "better . . . [reflect] the focus of a summary judgment determination." FED.R.CIV.P. 56(a) Advisory Committee Comments.

portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material dispute of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine dispute material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine [dispute] for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the

non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

## III. DISCUSSION

### A. FACTS[2]

Coachman began work for H.M.M.A. as a production worker on January 17, 2006. *Whitehead's Affid*. (Def's Ex. A) at 1. While at work on or around February 6, 2008, Coachman suffered a neck injury. *Id*. at 2; *Vocational Disability Rating* (Def's Ex. C) at 1. Coachman was treated by several physicians and underwent a cervical fusion on January 21, 2009. *Vocational Disability Rating* (Def's Ex. C) at 5. H.M.M.A., through its Workmen's Compensation administrator, paid Coachman's medical expenses from his authorized treating

[2] On a motion for summary judgment, the court construes the facts in the light most favorable to the non-movant.

physicians. *Workmen's Compensation Settlement Agreement* (Doc. No. 7-2, Def's Ex. B) at ¶ 8. On April 22, 2009, Coachman received a functional capacity assessment evaluation, in which the evaluator recommended that "he may need to avoid production paced work." *Functional Capacity Assessment* (Doc. No. 7-1, Attach. to Whitehead's Affid., Ex. B) at 1. Upon reviewing the results of the evaluation, Dr. Martin Jones, Jr., determined that Coachman could return to work on April 27, 2009, with restrictions of lifting no more than seventeen pounds occasionally and ten pounds overhead and no more than frequent standing or walking. *Treatment/Work Status Form* (Coachman's Ex. A). After receiving Dr. Jones' release, Coachman attempted to return to work at H.M.M.A. on four separate occasions. *Coachman's Affid*. (Doc. No. 11) at 2. On each occasion, a supervisor or other official at H.M.M.A. would not allow Coachman to return to work and sent him home. *Id*.

In June 2009, a vocational consultant determined that "[g]iven [the] recommended restrictions, it is apparent that Mr. Coachman will be unable to resume work in an automobile manufacturing capacity, unless within recommended lifting and overhead reaching restrictions." *Vocational Disability Rating* (Doc. No. 7-1, Attach. to Whitehead's Affid., Ex. C) at p. 7.

On July 16, 2009, Coachman presented a charge of disability discrimination against H.M.M.A. to the Equal Employment Opportunity Commission (EEOC), claiming that he suffered a disability as the result of an on-the-job injury and that H.M.M.A discriminated against him based on his disability by denying him an accommodation in violation of the Americans with Disabilities Act (ADA). *Charge of Discrimination* (Doc. No. 7-3, Def's Ex.

C).

One day later, Coachman's attorney submitted to HMMA a proposed change to its draft of the Workmen's Compensation Settlement Agreement, which stated the following:

> In further consideration of $57,000 from Defendant and Defendant's WC carrier, Plaintiff agrees to release and forever discharge Defendant, its agents, employees, servants, and Defendant's WC carrier, any and all other persons, firms, corporations, both known and unknown, from any and all claims, demands, actions, causes of action or suits at law or in equity, arising out of the Workmen's Compensation injury, including, but not limited to, injuries to the person resulting, or to result, from Plaintiff's alleged February 11, 2008 accident.

(Doc. No. 7-1, Attach. to Whitehead's Affid., Def's Ex. E.) On July 27, 2009, H.M.M.A. accepted the requested change. (Doc. No. 7-1, Attach. to Whitehead's Affid., Def's Ex. F.)

On July 31, 2009, Coachman and H.M.M.A. entered into a workers' compensation settlement agreement, in which the defendant agreed to pay Coachman a lump sum payment of $57,000 to extinguish his workers' compensation claim. (Doc. No. 7-2, Def's Ex. B.)

**B. The Waiver**

H.M.M.A asserts that Coachman waived his right to pursue an ADA claim when he voluntarily agreed to release the defendant from any further claims arising out of his work-related injury. Coachman, however, argues that he did not agree to waive his ADA claim in the settlement agreement.

When determining whether a release is knowingly and voluntarily entered, the court must consider:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the

> agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Bledsoe v. Palm Beach Cnty Soil & Water Conservation District*, 133 F.3d 816, 819 (11th Cir. 1998) (quoting *Puentes v. United Parcel Service, Inc.*, 86 F.3d 196, 198 (11th Cir. 1996)).

The agreement, which was signed by Coachman, contains a variety of boilerplate language releasing H.M.M.A. from liability. Paragraph eleven (11) of the agreement provides:

> Plaintiff desires and requests, and Defendant agrees to pay the Plaintiff the sum of Fifty-Seven Thousand Five Hundred and 00/100 Dollars ($57,500.00) in one lump sum, all sums paid as final compromise and satisfaction of any and all claims Plaintiff has or may have, including, but not limited to, Workmen's Compensation benefits past, present and future. . . .

*Worker's Compensation Settlement Agreement* (Doc. No. 7-2, Def's Ex. B) at p. 2.

Other sections are more limited. Paragraph fourteen (14) of the agreement, which was drafted by Coachman's attorney, provides:

> In further consideration of Fifty-Seven Thousand Five Hundred and 00/100 ($57,000.00) from Defendant and Defendant's Workmen's Compensation carrier, Plaintiff agrees to release and forever discharge Defendant, its agents, employees, servants, and Defendant's Workmen's Compensation carrier, any and all other persons, firms, corporations, both known and unknown, from any and all claims, demands, actions, causes of actions or suits at law or in equity, arising out of the worker's compensation injury, including, but not limited to, injuries to the person resulting, or to result, from Plaintiff's alleged February 11, 2008 accident. . . .

*Id*.

In addition, paragraph Sixteen (16) of the agreement states:

> This Settlement Agreement is substantially in accordance with the Workmen's Compensation Laws of the State of Alabama, as amended, and when the payment provided for above has been made, [H.M.M.A.] and its Workmen's Compensation carrier, Employer's Claim Management, Inc., shall be and are hereby released from all claims under the Workmen's Compensation Act or otherwise.

*Id* at p. 3.

H.M.M.A. has moved for summary judgment based on the language of the release in the settlement agreement. ADA claims may be waived by agreement if the employee's consent to settlement is voluntary and knowing. *See Bledsoe v. Palm Beach Cnty. Soil and Water Conservation District*, 133 F.3d 816, 819 (11th Cir. 1998); *Dawson v. Miami-Dade Cnty.*, No. 07-20126 CIV, 2008 WL 1924266 (S.D. Fla. March 11, 2008) (unpublished). After careful review, this court is not convinced that the release language in the settlement agreement establishes that Coachman voluntarily and knowingly waived his right to bring an ADA action in this case. Although paragraph 11 provides that payment was made "as final compromise and satisfaction of *any and all claims Plaintiff has or may have, including, but not limited to*, Workmen's Compensation benefits past, present and future" (Doc. No. 7-2, p. 2) and paragraph16 provides that H.M.M.A. and its workmen's compensation carrier shall be "released from all claims under the Workmen's Compensation Act *or otherwise*" (*Id*., p. 3), the language in paragraph 14 indicating that H.M.M.A. and its workmen's compensation carrier shall be released "from any and all claims, demands, actions, causes of actions or suits at law or in equity, *arising out of the worker's compensation injury*, including, but not limited to, injuries to the person resulting, or to result, from Plaintiff's

alleged February 11, 2008 accident" is more specific.

When applying the *Puentes* factors, the court is unable to discern whether Coachman voluntarily and knowingly released the ADA claim. There is nothing in the release that suggests or mentions a waiver of any federal discrimination claims. In addition, the defendants have failed to point to evidence indicating that Coachman was provided any additional consideration in exchange for his allegedly waiving his rights under the ADA. Furthermore, although Coachman was represented by counsel at the time he signed the agreement, the evidentiary materials indicate that his counsel was retained for the purpose of representing him in the workers' compensation case. *See Coachman's Affid.* (Doc. No. 11) at p. 2.

Moreover, the clarity of the agreement is a concern. "When faced with an ambiguity in a contract, the duty of the court is not to revoke the entire agreement, but to resolve the ambiguity to give effect to the intent of the parties." *Ward v. Check Into Cash of Alabama, LLC*, 981 So. 2d 434, 438 (Ala. Civ. App. 2007) (citing *BellSouth Mobility, Inc. v. Cellulink, Inc.*, 814 So. 2d 203 (Ala. 2001)).[3] "[A]n agreement should only be construed against the drafter as a last resort when no other principles of contract construction can resolve the

[3] In general, construction and enforcement of settlement agreements are governed by state contract law. *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000); *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999); *Blum v. Morgan Guar. Trust Co. of New York*, 709 F.2d 1463, 1467 (11th Cir. 1983). *See also Borque v. Trugreen, Inc.*, 389 F.3d 1354 (11th Cir. 2004) (applying Florida law when determining whether agreement resulting from settlement of workers' compensation claim could include general release language); *Georgia Elec. Membership Corp. v. Hi-Ranger, Inc.*, 273 F.3d 935, 936 (11th Cir. 2001) (certifying question to Georgia Supreme Court whether under state law a workers' compensation settlement agreement which specifically recited to not be a release of the employer/insurer's pending claims, extinguished the claims of the employer/insurer).

ambiguity." *Ward*, 981 So. 2d at 438 (citing *Cavalier Mfg. Co. v. Clarke*, 862 So. 2d 634, 642 (Ala. 2003)). A rule of contract construction is that a specific provision prevails over a general provision relating to the same subject matter. *Ward*, *supra* (citing *ERA Commander Realty, Inc. v. Harrigan*, 514 So. 2d 1329 (Ala. 1987)). Therefore, the more specific release provision in paragraph 14 is primarily at issue in this case.

H.M.M.A. argues that Coachman intended for the waiver of claims "arising out of the workers' compensation injury" in the settlement agreement to include his ADA injury because he stated in his EEOC charge of discrimination that he "suffered an on-the-job injury that has rendered [him] as a person with a disability." (Doc. No. 7-3, Def's Ex. C.) Coachman does not dispute that the workers' compensation injury and the ADA injury arose from the same incident. Coachman, however, argues that he did not intend to release H.M.M.A. from liability for the ADA claim when he signed the settlement agreement releasing the defendant from liability in his workers' compensation case. Coachman contends that he believed that the language drafted by his attorney in the settlement agreement would allow him to proceed with his discrimination case.[4]

The court questions why Coachman did not include an express reservation of his ADA claim in the settlement agreement. *See Gates Rubber Co. v. Cantrell*, 678 So. 2d 754, 756 (Ala. 1996) (citing *Ex parte Aratex Services, Inc.*, 622 So. 2d 367, 369 (Ala. 1993) (claim asserting defendant retaliated against plaintiff for filing a workers' compensation claim).

---

[4] In his response, Coachman also provides information concerning specific legal advice provided by his lawyer. To the extent Coachman attempts to use a third-party's advice to prove the truth of the matter asserted, the court will not consider the statements in this Recommendation. FED.R.EVID. 801(c).

Nonetheless, Coachman did specifically waive claims "arising out of a *worker's compensation* injury" in the settlement agreement. This court has been unable to find any cases in Alabama or this Circuit in which the specific term "worker's compensation injury" has been applied when releasing ADA claims or other federal anti-discrimination claims in a release provision of a worker's compensation settlement agreement.

The agreement raises the question of whether ambiguous language in a workers' compensation settlement agreement releases H.M.M.A from an ADA claim that is non-justiciable in a workers' compensation forum. *See Borque v. Trugreen*, 389 F.3d 1354, 1358 (11th Cir. 2004) (applying Florida law when determining language in workers' compensation agreement did not release defendant from plaintiff's retaliatory discharge claim). The Alabama Workers' Compensation Act and the Americans with Disabilities Act were promulgated to remedy different ills. Therefore, the court is hesitant to permit an ambiguous provision in a settlement agreement "consummated in satisfaction of a workers' compensation claim to preclude vindication of a cognizable federal right or frustrate available federal rights absent an express release of such rights." *Brown v. B & D Plastics, Inc.*, 873 F. Supp. 1511, 1515 (M.D. Ala. 1994) (agreement stating that defendant was released from subsequent claims "on account of said injury" did not "compel[] a conclusion that Plaintiff cognizantly released all future claims grounded on federal anti-discrimination law"). Given the express language of the agreement and logical inferences that may reasonably drawn therefrom, it is arguable that the agreement pertains only to workers' compensation and claims related thereto. This court cannot conclude that the settlement

language is sufficiently clear to dispose of Coachman's ADA claim at this time.[5] *See Borque v. TruGreen, Inc.*, 389 F.3d at 1358-59 (determining settlement language in workers' compensation agreement was not sufficiently clear to dispose of plaintiff's retaliatory discharge claim).

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion for summary judgment be DENIED.

It is further ORDERED that the parties shall file any objections to the said Recommendation on or before **January 24, 2011.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of*

[5] The court does not conclude that an ADA claim can never be disposed of through the use of a general settlement agreement in a workers' compensation context.

*Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 11th day of January, 2011.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE