IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE COACHMAN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO.  2:10CV711-MHT-CSC |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff, Willie Coachman, Jr. ("Coachman"), a former employee of defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA"), brings this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § § 12101-12117. He alleges that HMMA discriminated against him by denying him a reasonable accommodation for a disability and by wrongfully discharging him in violation of the ADA. The court has jurisdiction of this case pursuant to 42 U.S.C. § 12117 and its federal question jurisdiction, 28 U.S.C. § 1331.

On August 26, 2011, HMMA filed a motion for summary judgment. (Doc. 48).  On September 20, 2011, in response to HMMA's motion, Coachman filed an affidavit and other evidentiary materials. (Doc. 52).  The court construes the Coachman's affidavit as a response to the HMMA's motion for summary judgment.

This action is now pending before the court on HMMA's motion for summary judgment. (Doc. 48). Having carefully reviewed HMMA's motion for summary judgment, Coachman's response, and the parties' evidentiary submissions, the court concludes that HMMA's motion for summary judgment should be granted.

## Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of

---

[1]In *Celotex*, 477 U.S. at 324, the court stated:

"[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial....We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves...."

Effective December 1, 2010, the language of Fed. R. Civ. P. 56(a) was amended. The word "dispute" replaced the word "issue" to "better ... [reflect] the focus of a summary judgment determination." Fed. R. Civ. P. 56(a) Advisory Committee Comments.

material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material dispute of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine dispute material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir.1997); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir.1995).

However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S.

at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

## Facts[2]

HMMA operates an automobile manufacturing facility in Montgomery, Alabama, that produces the HMMA Sonata and Elantra automobiles (Doc. 49-2, ¶2). HHMA has a workforce of approximately 2,400 people. (*Id*., ¶3). HMMA's facility in Montgomery includes a Stamping Shop, a Welding Shop, a Paint Shop, a General Assembly Shop, an Engine Shop, and a two-mile test track. (*Id.*, ¶2). HMMA is comprised of several divisions, including the production division. (*Id.*, ¶4). Within the production division is the general assembly department and the safety department. *Id*. Within the general assembly department is the trim-chassis area and the pre-delivery inspection area. *Id*.

When an employee is injured, HMMA attempts to find and provide light duty work for the injured employee when such work is available. (Doc. 49-1, ¶4). Injured employees are eligible to receive light duty assigments for a "temporary period." *Id*.

The safety department at HMMA is responsible for evaluating whether light duty or

---

[2]On a motion for summary judgment, the court construes the facts in the light most favorable to the non-movant. *Anderson*, 477 U.S. at 255.

full duty positions are available for injured HMMA employees. (Doc. 49-1, ¶3). At least monthly, as needed, the safety department's members met to discuss the status of injured workers' recovery and medical treatment, the expected dates on which injured workers could return to full work duties, and the availability, if any, of light duty and full duty work that would fit within the injured employees' medical restrictions. *Id.*

Once an injured employee reaches maximum medical improvement (MMI), he is returned to his original position, if possible, or HMMA places him in a different vacant full-time position, if possible. (*Id.*, ¶4). An injured employee must be cleared to work by a physician before he will be allowed to return to work. (*Id.*, ¶6). If, due to medical restrictions, the injured employee cannot return to his original position, HMMA attempts to find another position, if available, that the injured employee can perform. (*Id.*, ¶ 5). HMMA does not have any permanent light duty positions, and HMMA does not place employees in light duty positions that do not fill a need at HMMA. (*Id.*, ¶11).

On January 17, 2006 Coachman began work on an at-will basis for HMMA as a production worker in the trim-chassis area. (Doc. 7-1 ¶2; Doc. 49-5, p.4). While at work on or around February 6, 2008, Coachman suffered a neck injury for which he subsequently sought treatment and filed a worker's compensation claim. (Doc. 7-1, ¶4; Doc. 49-5, p. 47). On February 22, 2008, Dr. Chris Heck, an orthopaedic doctor, evaluated Coachman's injury and prescribed the following restrictions on Coachman's activities: no neck extension/flexion for greater than ten minutes, no "over-the-head activity," no repetitive outstretched right arm

work, and no lifting of objects weighing over fifteen pounds. (Doc. 49-5, pp. 54-55). When Coachman returned to work after February 22, 2008, he was moved to a different position on the production line for one day and then assigned to housekeeping duties. (Doc. 49-4, 125:1-128:23).

With one exception,[3] from February 22, 2008 until April 27, 2009, when Coachman was not on medical leave and reported to work with medical restrictions, HMMA assigned him work that satisfied his medical restrictions when such work was available. (Doc. 49-1 ¶11). Meanwhile, Coachman was treated by several physicians for his injury and, on January 21, 2009, he underwent surgery to fuse vertebrae in his neck. (Doc. 49-5, p. 76). HMMA, through its workmen's compensation administrator, paid Coachman's medical expenses from his authorized treating physicians. (Doc. No. 7-2, ¶8).

On April 22, 2009, Coachman received a functional capacity assessment evaluation, in which the evaluator recommended that Coachman "may need to avoid production paced work." (Doc. 49-3, ¶5). During the evaluation, Coachman stated that he thought he could perform work in the pre-delivery inspection area. (Doc. 49-5 p. 67). On April 23, 2009, upon examining Coachman and reviewing the results of the evaluation, Dr. Martin Jones, Jr., determined that Coachman could return to work on April 27, 2009 with restrictions of lifting

---

[3] The one exception occurred on or about February 26, 2008, when Coachman was assigned work that did not comport with Dr. Heck's prescribed limitations on Coachman's activities. (Doc. 49-4, 38:1-41:14, 132:7-134:17). Coachman brought the matter to the attention of his supervisor, who was unaware of the restriction. *Id*. The restriction was verified the following day, and Coachman was no longer assigned to work outside his prescribed restrictions. *Id*.

6

no more than seventeen pounds occasionally and ten pounds overhead and no more than frequent standing or walking. (Doc. 11-1; Doc. 49-5, p. 71; Doc. 49-4, 198:20-200:22). According to Dr. Jones's findings, Coachman reached MMI by April 27, 2009. (Doc. 49-5, p. 71; Doc. 49-4, 199:14-22).

On May 4, 2009, Coachman was examined by Dr. Montgomery Highley, a physician at a clinic that operates on HMMA's premises, but that is not owned or operated by HMMA. (Doc. 49-3). Dr. Highley concluded that Coachman could not be accommodated to work in his former position in the trim-chassis area, and he could not work in any other positions involving "production-paced work." *Id.* Dr. Highley informed HMMA of these findings. *Id.*

Following Dr. Highley's examination, HMMA's safety department manager, Dennis Mickelson, met with Coachman and informed him that, given his permanent restrictions and Dr. Highley's recommendation, there were no available positions at HMMA that would accommodate Coachman's medical restrictions. (Doc. 49-1 ¶ 12). Mickelson also informed Coachman "what the process would be going forward if circumstances were to change." *Id.* From April 2009 through August 2009, no positions became open that Coachman could fill with his permanent restrictions. (Doc. 49-1 ¶ 14).

Coachman attempted to return to work at HMMA on four separate occasions between May 22, 2009 and June 2, 2009. (Doc. 11 ¶3a; Doc. 49-4, 35:11-36:18). On each occasion, a supervisor or other official at HMMA would not allow Coachman to return to work and

7

sent him home. *Id*.

On June 1, 2009, a vocational consultant completed a vocational disability evaluation for Coachman and concluded that, "[g]iven [the] recommended restrictions, it is apparent that Mr. Coachman will be unable to resume work in an automobile manufacturing capacity, unless within recommended lifting and overhead reaching restrictions." (Doc. 49-5 p. 78).

On June 14, 2009, Coachman applied for unemployment compensation. (Doc. 52-2). He reported that he last worked on January 7, 2009, and that no reason was given for the termination of his employment. *Id*. Based on Coachman's application, the Alabama Department of Industrial Relations notified HMMA that Coachman had applied for unemployment benefits. (Doc. 52-1). On June 25, 2009, HMMA responded to the notification with the following letter:

> Dear Sir or Madam:
>
> [HMMA] is in receipt of the Department of Industrial Relations['] ... Notice of Claim and Request for Separation Information.... HMMA respectfully submits this letter as its sole response to DIR's inquiry of Claimant's reason for separation.
>
> [Coachman] began working at HMMA on 1/17/2006. Claimant works with HMMA as a Production Team Member.
>
> [Coachman] went on Short Term Disability ("STD") [l]eave because of *personal* health reasons (i.e., health reasons unrelated to his work at HMMA[)]. Importantly, [Coachman] is receiving STD benefits, which amounts to 66 percent of his pre-illness take home pay. Further, HMMA continues to provide [Coachman] with all of his benefits, including health insurance and life insurance.
>
> Coachman's employment with HMMA has not ended. Instead, he is simply

8

> out on STD. [Coachman] has not yet returned to work (or notified HMMA that he is not going to return to work).
>
> Because [Coachman] is on STD and receiving STD benefits and health insurance benefits from HMMA, he is not deemed "unemployed" and he is not eligible for any unemployment compensation benefits. *See* § 25-4-77. In the alternative, if [Coachman] has chosen not to return to work, he is disqualified from receiving benefits because he has voluntarily resigned from his employment without "good cause" connected with his employment at HMMA. *See* § 25-4-78(2).

(Doc. 52-3) (footnotes omitted; emphasis in original).

Coachman's unemployment compensation claim was initially denied because of the above letter. (Doc. 52 ¶ 2b). Coachman then informed the Alabama Department of Industrial Relations that he was not receiving short term disability pay and provided documentation of this fact. *Id*. Thereafter, on July 8, 2009, the Alabama Department of Industrial Relations notified HMMA that "a determination has been made on this [unemployment compensation] claim holding [Coachman] eligible for benefits." (Doc. 52-1).

On July 16, 2009, Coachman presented a charge of disability discrimination against HMMA to the Equal Employment Opportunity Commission ("EEOC"), claiming that he suffered a disability as the result of an on-the-job injury and that HMMA discriminated against him based on his disability by terminating his employment and by denying him an accommodation. (Doc. 49-5 p. 2). Coachman charged that the discrimination took place from May 22, 2009 to June 2, 2009, and he did not indicate that the discrimination was continuing. *Id*. Coachman's EEOC charge consisted of the following allegations, in full:

9

> I am disabled and I was hired by [HMMA] on January 17, 2006, as a production team member. On or about February 11, 2008, I suffered an on the job injury that has rendered me as a person with a disability. I returned to work on April 28, 2009. I asked my employer for an accommodation, which was denied. A week later I was examined by the company doctor at the plant. On or about June 2, 2009, I learned that my employer was not going to allow me to return back to work.[4]
>
> I believe that I was discriminated against because of my disability and denied an accommodation, which is in violation of the Americans with Disabilities Act of 1990, as amended. When I returned to work on April 28, 2009, I cited a number of jobs I could perform with or without an accommodation.

(Doc. 49-5, p.2).

According to Coachman's sworn complaint, the EEOC mailed him a right-to-sue letter on May 16, 2010. (Doc. 1 ¶ 3).

Meanwhile, on August 26, 2009, a medical leave specialist at HMMA sent Coachman the following letter:

> Dear Willie:
>
> According to the records provided to [HMMA], you have been on medical leave since January 21, 2009. Prior to January 21, 2009, you missed work for the same or related injury from June 3, 2008 until June 19, 2008 and from September 22, 2008 until January 5, 2009. Accordingly, you have been on medical leave for a cumulative period of 48 weeks for the same or related injury.
>
> In accordance with past practice, HMMA administratively terminates the

---

[4] In his deposition in this case, Coachman testified that he learned that he was not going to be allowed to return to work at HMMA when his own attorney in his related workmen's compensation case called and informed him that HMMA "wasn't going to let [him] come back, and they were doing vocational disability for [him]." (Doc. 49-4, 35:22-37:5). Coachman asked his attorney if HMMA was "terminating [him], and she said yes." *Id*. Thereafter, Coachman "felt like" he had been terminated because he returned to work on four occasions but was not allowed to work. *Id.* He then asked HMMA for official termination paperwork and "they wouldn't give it to [him]." *Id*.

10

> employment of [employees] once they have been on approved medical leave for a cumulative period of one and one-half ...years (*i.e.* 78 calendar weeks) for the same or related injury or illness. Accordingly, HMMA will administratively terminate your employment on March 26, 2010 unless you return to work to your previously assigned job or you are able to fill an open position at HMMA through transfer, promotion or other means.
>
> Please contact me at [phone number redacted] if you desire to return to your job at HMMA. If you are unable to return to your position and wish to apply for any internal positions that may be open, I am enclosing a Team Advisor [sic] which provides instructions on how Team Members can apply online for HMMA internal job postings. If you do not contact me by March 26, 2010 to arrange for your return to work or you do not apply for open jobs, your employment will be administratively terminated.
>
> If you are administratively terminated, your employment benefits will cease on March 31, 2010 at 11:59 p.m. After this time HMMA's Benefits Section will provide COBRA information to you.

(Doc. 49-1 ¶16; Doc. 49-1, Exhibit A).

After receiving the August 26, 2009 letter, Plaintiff did not contact HMMA to attempt to return to work in his former position or to apply for work in any other position. (*See* Doc. 49-4, 214:2-220:19). Until March 26, 2010, Coachman was placed on medical leave and remained eligible for HMMA benefits. (Doc. 49-2 ¶9). During that time, HMMA paid $332.36 on a bi-weekly basis for Coachman's medical, vision, and life insurance. *Id*. On March 26, 2010, HMMA administratively terminated Coachman's employment, *id*., and sent him the following letter:

> Dear Willie:
>
> As you were advised by medical leave specialist Jamie Spaulding, in a letter dated August 26, 2009, HMMA administratively terminates the employment of Team Members once they have been on an approved medical leave for a

11

> cumulative period of eighteen months for the same or related injury or illness.
>
> Regretfully, HMMA must administratively terminate your employment because you have been on medical leave for a cumulative period of eighteen months. In addition, you have not reported to work since January 14, 2009, [sic] nor have you applied for any open jobs at HMMA. As of March 26, 2010, your employment at [HMMA] will cease for the aforementioned reasons. Consequently, your employment benefits will cease on March 31, 2010. HMMA's Benefits Section will provide COBRA information to you.
>
> If you have questions regarding this information you may call the Benefits department.

(Doc. 49-2 ¶9; Doc. 49-5 p. 81)

On August 20, 2010, Coachman filed a verified complaint against HMMA alleging that HMMA violated the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111, *et seq.*, by failing to accommodate his disability, and by terminating his employment due to his disability. (Doc. 1 ¶¶ 18-21). On August 26, 2011, HMMA filed a motion for summary judgment. (Doc. 48). On September 20, 2011, Coachman filed an opposition to the motion for summary judgment. (Doc. 52).

## DISCUSSION

The ADA mandates that employers shall not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Thus, to prevail on a charge of discrimination under the ADA, "a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of

12

his disability." *Holly v. Clairson Indus., LLC,* 492 F.3d 1247, 1255-56 (11th Cir. 2007).

It is undisputed that Coachman has a disability. It is also undisputed that, with or without accommodation, Coachman's disability makes him unable to perform the essential functions of his former position as a production worker in the trim-chassis area. (*See*, *e.g.*, Doc 49-3 ¶ 5). Therefore, he is not a "qualified individual" as to that position. *See* 42 U.S.C. 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Accordingly, Coachman cannot maintain an ADA claim premised on HMMA's failure to return him to his former position as a production worker in the trim-chassis area. 42 U.S.C. § 12112(a); *Holly*, 492 F.3d at 1255-56.

However, under the ADA, unlawful discrimination includes an employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5). Under the ADA, "reasonable accommodations" for an employee's disability may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(b). Under the ADA, the plaintiff bears the burden of identifying an accommodation, and of

13

demonstrating that the accommodation is reasonable and allows him to perform the job's essential functions. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 -56 (11th Cir. 2001); *Willis v. Conopco, Inc.*, 108 F.3d 282, 283 (11th Cir. 1997).

In his EEOC charge, Coachman alleged that HMMA failed to accommodate his disability from May 22, 2009 to June 2, 2009. (Doc. 49-5 p. 2). In his complaint, Coachman alleges that HMMA informed him on April 28, 2009 that they could not accommodate his "permanent light duty" status. (Doc. 1 ¶ 11). Coachman further alleges in his complaint that he learned on June 2, 2009 that HMMA "did not intend to allow him to return to work, with our without an accommodation." (Doc. 1 ¶ 14).

In support of its motion for summary judgment, HMMA presented undisputed evidence that, from April 2009 through March 26, 2010 (the date of Coachman's termination) HMMA did not have any permanent positions that Coachman could perform, with or without accommodations. (Doc. 49-1 ¶ 11-14; Doc. 49-2, ¶7). The ADA does not require an employer to create a new position to accommodate a disabled worker. *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998); *see* 42 U.S.C. § 12111(9)(b) (defining "reasonable accommodations" to include "reassignment to a *vacant* position" (emphasis added)).

Accordingly, HMMA met its summary judgment burden to show an absence of evidence to support the existence of a reasonable accommodation for Coachman's medical restrictions. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-1116 (11th Cir. 1993)

("For issues ... on which the non-movant would bear the burden of proof at trial ... the [party moving for summary judgment] simply may show ... that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial."); *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) ("[T]he burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable.").

Therefore, the burden of production on summary judgment shifted to Coachman to present evidence sufficient to withstand a motion for directed verdict on the issue of whether a reasonable accommodation existed. *Stewart*, 117 F.3d at 1286 (holding that the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job rests with that individual); *Fitzpatrick*, 2 F.3d at 1116 (holding that, if the party moving for summary judgment carries its initial burden to demonstrate the absence of a genuine issue of a material fact, responsibility then shifts to the non-movant to produce evidence "sufficient to withstand a directed verdict motion at trial on the material fact" in question) ; *see also Anderson*, 477 U.S. at 251-52 (holding that, for a plaintiff's case to withstand a motion for directed verdict, there must be evidence "upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof

15

is imposed").

In response to HMMA's summary judgment motion, Coachman presented ***no*** evidence that a reasonable accommodation existed. Instead, Coachman's summary judgment response consists entirely of the argument that HMMA's June 25, 2009 letter to the Department of Industrial Relations incorrectly represented that Coachman was on short-term disability leave for "personal" health reasons. (Doc. 52). Coachman argues that he was initially denied unemployment benefits as a result of that letter. (Doc. 52). However, even if HMMA's June 25, 2009 letter incorrectly portrayed Coachman's employment status, the letter does not show that Coachman was terminated because of his disability or that a reasonable accommodation existed that would permit Coachman to continue his employment at HMMA within his medical restrictions. Therefore, Coachman's summary judgment response does not satisfy his burden to demonstrate the existence of a genuine factual dispute as to the material legal issues. *See Fitzpatrick*, 2 F.3d at 1116 ("If ... the movant carries the initial summary judgment burden ..., responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact."); *see also Anderson*, 477 U.S. at 248 (holding that a material fact is a fact that affects the outcome of the lawsuit under the substantive law governing the case; "materiality is ... a criterion for categorizing factual disputes in their relation to the legal elements of the claim" and "[f]actual disputes that are irrelevant or unnecessary will not be counted" as material).

The court notes that the evidentiary submissions indicate that, during his April 22,

2009 functional capacity evaluation, Coachman identified work in the pre-delivery inspection area as work that he could perform within his restrictions. (*See* Doc. 49-5 p. 67; Doc. 49-4, 191:22-194:13). However, Coachman has identified no evidence that such work was a reasonable accommodation, no evidence that a job opening in the pre-delivery inspection area existed, and no evidence that he was qualified for such a job. *See Lucas*, 257 F.3d at 1256 (holding that the duty to accommodate "does not require the employer to bump another employee from a position in order to accommodate a disabled employee") ; *Terrell*, 132 F.3d at 626 (holding that the ADA does not require an employer to create a new position to accommodate a disabled worker). Therefore, Coachman has not met his burden to demonstrate the existence of a reasonable accommodation in the form of a job in the pre-delivery inspection area.

Because Coachman has not met his burden to demonstrate the existence of a reasonable accommodation that would allow him to work within his restrictions, HMMA is entitled to summary judgment on Coachman's claim that HMMA discriminated against him by denying him a reasonable accommodation for his disability. *See Fitzpatrick*, 2 F.3d at 1115-1116; *Happy Herman's*, 117 F.3d at 1286.

## CONCLUSION

Because the court concludes that there is no genuine issue of material fact and that HMMA is entitled to judgment as matter of law, it is the Recommendation of the Magistrate Judge that HMMA's motion for summary judgment (Doc. 48) be **GRANTED** and that this

case be **DISMISSED** with prejudice. It is further

**ORDERED** that the parties shall file any objections to this Recommendation on or before **March 14, 2012**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of February, 2012.

        /s/Charles S. Coody
        CHARLES S. COODY
        UNITED STATES MAGISTRATE JUDGE